UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

3D SYSTEMS, INC.,

    Plaintiff,

-vs-

Case No. 08-11734
HON. AVERN COHN

ENVISIONTEC, INC., and
ENVISIONTEC GMBH,

    Defendants.

_____/

**MEMORANDUM AND ORDER
GRANTING DEFENDANTS' MOTION TO DISMISS AND
DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION**

I.  Introduction

This is a declaratory judgment action under 28 U.S.C. § 2201-02 relating to a patent dispute. Plaintiff, 3D Systems, Inc., (3D) is a manufacturer of three-dimensional rapid prototyping equipment, particularly the V-Flash Desktop Modeler. Defendants, Envisiontec, Inc., a Michigan corporation and Envisiontec GmbH, a German corporation, (collectively, Envisiontec) also manufacture three-dimensional rapid prototyping equipment.

3D and its German counterpart defendants each hold numerous patents covering rapid prototyping equipment. As to Envisiontec's patents, the Amended Complaint alleges:

> 16.  Upon information and belief, Envisiontec GmbH is the owner of a number of United States patents related to three-dimensional prototyping and manufacturing systems that would likely be asserted in an infringement action brought by Envisiontec, Inc. and Envisiontec GmbH against 3D Systems and/or its customers for the manufacture, use, and sale of the V-Flash™ Desktop Modelers, such patents being U.S. Patent Nos. 6,942,830, 7,052,263, and 7,195,472 (the "Envisiontec

Patents").

3D says that Envisiontec has threatened its customers and potential customers interested in purchasing the V-Flash with patent infringement lawsuits and that such threats make out an "Article III case or controversy. . . such that [3D] and its customers need not risk a suit for infringement by [Envisiontec] for engaging in [selling and purchasing the V-Flash] before seeking a declaration of their legal rights." Amended Complaint at ¶ 20. 3D asks for the following relief:

> A. A declaration that neither 3D Systems, nor its customers, have infringed, induced infringement of, or contributorily infringed, and does not infringe, induce infringement of, and/or contributorily infringe any valid or enforceable claim of U.S. Patent Nos. 6,942,830, 7,052,263, and 7,195,472;
>
> B. A declaration that U.S. Patent Nos. 6,942,830, 7,052,263, and 7,195,472 are invalid and void for failure to comply with one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103 and/or 112;
>
> C. A declaration that this case is "exceptional" within the meaning of 35 U.S.C. § 287;
>
> D. An award to 3D Systems of its costs, attorney fees, and expenses pursuant to 35 U.S.C. § 285;
>
> E. An award to 3D Systems of all further and additional relief as the Court deems just and proper.

Envisiontec has moved[1] to dismiss the case for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), or in the alternative for summary judgment, Fed. R. Civ. P. 56, because the Amended Complaint fails to allege:

---

[1] Envisiontec has also moved to strike declarations filed by 3D in response to its motion to dismiss. The motion to strike will be discussed infra.

- that defendants have asserted any specific patents against anyone

- that defendants have made any threat of patent infringement against 3D

- that defendants have identified any specific patent claims that covers the V-Flash.

In sum, Envisiontec says the allegations of the Amended Complaint fall short of allowing the case to blossom into a full-blown patent dispute.

Envisiontec is correct. For the reasons which follow, Envisiontec's motion to dismiss is GRANTED and the case is DISMISSED. The alternative motion for summary judgment is MOOT.

## II. Legal Standards

### A. Declaratory Judgment Action

The applicable law related to declaratory judgment actions in patent disputes was recently stated in The Hertz Corporation, et al. v. Enterprise Rent-A-Car, et al., ___ F. Supp. 2d ___, 2008 WL 2232615 (D. Mass. 2008) at * 10-11 as follows:

> "[T]he purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 956 (Fed. Cir. 1987). As the Supreme Court has stated, "the question in each cases is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, ___, 127 S.Ct. 764, 771, 166 L.Ed.2d 604 (2007) (citation omitted). Prior to MedImmune, the Federal Circuit applied a more stringent two-pronged test to determine whether there was a "reasonable apprehension of suit" involving an assertion of patent rights. After that test was abrogated by the Supreme Court, the Federal Circuit summarized the new test as follows:
>
>> Article III jurisdiction may be met where the patentee

3

> takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do. We need not define the outer boundaries of declaratory judgment jurisdiction, which will depend on the application of the principles of declaratory judgment jurisdiction to the facts and circumstances of each case. We hold only that where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.

SanDisk Corp. v. STMicroelecs., Inc., 480 F.3d 1372, 1381 (Fed. Cir. 2007). The Federal Circuit has remarked that "[w]hether intended or not, the now more lenient legal standard facilitates or enhances the availability of declaratory judgment jurisdiction in patent cases. The resulting ease of achieving declaratory judgment jurisdiction in patent cases is accompanied by unique challenges. For instance, the ease of obtaining a declaratory judgment could occasion a forum-seeking race to the courthouse between accused infringers and patent holders." Micron Tech., Inc. v. Mosaid Techs., Inc., 518 F.3d 897, 902 (Fed. Cir. 2008) (internal citations omitted).

Additionally, whether or not to hear a declaratory judgment action is a matter of discretion. This is explained in Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc., 395 F.3d 1324, 1331-32 (Fed. Cir. 2005) as follows:

> The Act, which parallels Article III of the Constitution, "requires an actual controversy between the parties before a federal court may exercise jurisdiction over an action for a declaratory judgment." EMC Corp. v. Norand Corp., 89 F3d 807, 810 (Fed. Cir. 1996). Generally, the presence of an "actual controversy," within the meaning of the Act, depends on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" Id. (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85

4

> L.Ed.2d 826 (1941)). Even if there is an actual controversy, the district court is not required to exercise declaratory judgment jurisdiction, but has substantial discretion to decline that jurisdiction. Id.; see also Wilton v. Seven Falls Co., 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (reaffirming that since its inception, "the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants"). As we summarized in Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 634 (Fed. Cir. 1991): "When there is no actual controversy, the court has no discretion to decide the case. When there is an actual controversy and thus jurisdiction, the exercise of that jurisdiction is discretionary."

As one commentator has stated; "[e]ven if the conditions for declaratory judgment jurisdiction are met, the court has discretion to decline to hear a declaratory judgment action." Herbert F. Schwartz, Patent Law and Practice Fifth Edition § 3.I.B. (Fed. Judicial Center 2006).

### B. Motion to Dismiss

In determining whether the Court has subject matter jurisdiction of a claim under Fed. R. Civ. P. 12(b)(1), the Court must assume that plaintiffs' allegations are true and must construe the allegations in a light most favorable to them. Little Traverse Bay Bands of Odawa Indians v. Great Spring Waters of America, Inc., 203 F. Supp. 2d 853, 855 (W.D. Mich. 2002). "Relief is appropriate only if, after such construction, it is apparent to the district court that there is an absence of subject matter jurisdiction." Id. Where jurisdiction is challenged under Fed. R .Civ .P. 12(b)(1), a plaintiff bears the burden of proving jurisdiction in order to survive the motion. Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir. 1986).

### III. Envisiontec's Motion to Strike

5

A.

As an initial matter, Envisiontec has moved to strike the declarations of Charles W. Hull, Keith A. Roberson and William Scott Polk on the grounds that they are inadmissible under the Federal Rules of Evidence and applicable case law because they are

- irrelevant to the issue of whether or not defendants made a threat to assert the U.S. Patents against 3D
- conclusory and insufficiently detailed to make any material fact more or less likely
- based on hearsay

3D opposes the motion on the grounds it is baseless and "amounts to nothing less than an effort to sweep all adverse facts under the rug," and goes on to describe in some detail why each of the declarations contain non-hearsay evidence of facts relevant to the jurisdiction issue at hand.

B.

What the motion implicates, although neither party says so, is the nature of the evidence to be relied on by the Court in considering a 12(b)(1) motion. In <u>RMI Titanium Co. v. Westinghouse Electric Corp.</u>, 78 F.3d 1125. 1134 (6th Cir. 1996) (quoting <u>Mortensen v. First Federal Sav. & Loan Ass'n</u>, 549 F.2d 884, 890 (3d Cir. 1977)), the Sixth Circuit said:

> . . . At the outset we must emphasize a crucial distinction, often overlooked between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings. The facial attack does offer similar safeguards [to motions under Fed.R.Civ.P. 12(b)(6)] to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.Pro. 56. Because at issue in a factual 12(b)(1) motion is the trial

> court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover the plaintiff will have the burden of proof that jurisdiction does in fact exist.

Thus, the Sixth Circuit has distinguished between facial and factual attacks among motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Pritchard v. Dent Wizard Intern. Corp., 210 F.R.D. 591, 592 (S.D. Ohio 2002). A facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. Ohio Nat. Life Ins. Co. v. U.S., 922 F.2d 320, 325 (6th Cir. 1990). In reviewing a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. Id. On the other hand, a factual attack is "not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994).

Because the 3D case presents a "factual" rather than a "facial" motion for dismissal under Rule 12(b)(1), 3D's allegations are not presumed true and 3D bears the burden of proving the facts necessary to establish jurisdiction. In reviewing a factual 12(b)(1) motion, "a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." Ohio Nat. Life Ins. Co., 922 F.2d at 325. Also, hearsay statements may not be considered. Forbes v. State University of New York at Stonybrook, 259 F. Supp. 2d 227, 236 (E.D.N.Y. 2003), citing Kamen v. American Telephone & Telegraph Co., 791 F2d 1006, 1011 (2d Cir. 1986).

It is the Court's obligation is to "weigh the conflicting evidence to arrive at the factual predicate that subject matter exists or does not exist," Ohio Nat. Life Ins. Co., supra at 325, and in so doing the Court "has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." Id.

The Court will not strike the declarations. The Court can separate the grain from the chaff in the declarations and will consider only those portions which relate admissible evidence and evidence which is arguable relevant to the issue at trial.

### IV. The Parties' Positions

#### A. 3D's Position

1.

To make out "a substantial controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" 3D has filed four (4) declarations. They are that of

- Charles W. Hull, an executive officer of 3D. Hull describes the manufacture by 3D of the V-Flash and its success in the marketplace.

- Keith A. Roberson, in-house patent counsel of 3D. Roberson describes a July, 2007, letter to Dreve Otoplastik GmbH (Dreve) from German patent counsel for Envisiontec GmbH stating that the V-Flash infringes German patents owned by Envisiontec GmbH. Robinson's declaration includes as an exhibit a press release issued by Envisiontec GmbH stating that the V-Flash "is potentially infringing" the German patents. Lastly Roberson states that he has located the three (3) U.S. patents owned by Envisiontec GmbH described above, and that two (2) of them are counterparts of the German patents described in the letter to Drewe and in the press

release issued by Envisiontec GmbH

- Donald Tew, national sales manager for Dreve.  Tew says that Dreve is the exclusive worldwide distributor of the V-Flash.  Tew goes on to say that he attended the American Academy of Audiology (AAA) 2008 show in Charlotte, North Carolina, at which Dreve had a booth displaying the V-Flash.  At the AAA show, Tew had a conversation with A. El-Siblani, CEO of Envisiontec and Envisiontec GmbH in which Siblani said that if Dreve sells a V-Flash "Dreve will be in a lawsuit for patent infringement," and that as soon as Dreve sells a V-Flash "he is going to file an injunction."  Tew goes on to say that after the show he had conversations with Siblani about the V-Flash and the "Envisiontec patents," as well as an exchange of e-mails about 3D and Envisiontec and patent problems.  Tew also describes conversations he had with other potential customers of Dreve relating to Envisiontec's patents.  Attached as Exhibit A is an e-mail letter from Tew to a Dreve executive in Germany which summarizes the Siblani/Tew conversations very well.
- William Scott Polk, an employee of 3D.  Polk was at the AAA show and says he had conversations with Tew and others "on the subject of the V-Flash machine and Envisiontec's patent rights."

2.

Beyond the declarations, the Amended Complaint alleges that Siblani

> . . . personally threatened at least two of 3D Systems' U.S. customers and potential customers, Starkey Laboratories, Inc. . . . (following the AAA Show) and GN ReSound (at the AAA Show), with patent infringement suits when they purchase 3D Systems' V-Flash™ Desktop Modeler. . .

Amended Complaint at ¶ 15.  Starkey Laboratories, Inc. and GN ReSound are "the other

9

potential customers" described in Tew's declaration. The declaration does not say, however, that these potential customers told Tew that they were threatened by Siblani.

### B. Envisiontech's Position

In opposition to the declarations proffered by 3D, Envisiontec submits Siblani's declaration. Siblani acknowledges attending the AAA show and states "I did not threaten anyone with patent infringement suits while attending the AAA show." As to Tew particularly, Siblani states:

> I had no communication with him at the show and did not state or suggest that I would sue Drewe or its customers for patent infringement if they purchased the V-Flash device.

## V. Analysis

### A.

Nowhere in the declarations proffered by 3D is there

- any mention of any follow-up of the letter of the German lawyer or the press release relating to any effort by Envisiontec GmbH to act on the assertion that the V-Flash infringes Envisiontec GmbH's patents;
- any description of Envisiontec GmbH taking any action relating to any of the U.S. patents or taking any action relating to infringement by the V-Flash;
- any mention of any of the particular claims of the U.S. patents or how they read on the V-Flash
- any description of the structure, software or operation of the V-Flash;
- any mention of any direct contact by either defendant with 3D.

### B.

The arguable relevant evidence displays a dispute as to what Siblani said to Tew,

and what occurred in Germany. Assuming Roberson's description of what occurred in Germany is arguably relevant, and that Siblani aggressively addressed Tew, even making a threat of a lawsuit if 3D continued to market the V-Flash, a threat that was in general terms lacking any specificity, this is hardly enough to turn this case into a traditional piece of patent litigation,[2] particularly where there is no evidence that defendants ever had any contact with 3D relating to the manufacture and sale of the V-Flash. Even under an apparent more lenient standard for declaratory relief,[3] the evidence simply does not display a substantial controversy between 3D and defendants with adverse legal interests of sufficient immediacy and reality to allow this case to go forward to assess the validity of 3D's claims of non-infringement.[4]

In sum, the Court is satisfied that under all the circumstances 3D has not made out an action for a declaratory judgment.

---

[2]"A claim for declaratory judgment of non-infringement makes compulsory a counter-claim for infringement." Schwartz, supra at § 3.I.B.

[3]See p. 4, supra.

[4]This case is unlike Micron Tech., Inc. v. Mosaid Tech., Inc., 518 F.3d 897 (Fed. Cir. 2008) in which the Federal Circuit held that the facts established an actual case or controversy to warrant a declaratory judgment action. In Micron, the plaintiff was one of the four leading manufacturers of dynamic random access memory (DRAM) chips. Four year prior to filing suit for declaratory relief, defendant sent plaintiff a "warning letter" and several follow-up letters in subsequent years suggesting that plaintiff should license defendant's technology. Meanwhile, defendant aggressively sued other DRAM manufacturers. The cases settled upon the issuance of a license. After each licensing agreement, defendant "issued public statements reiterating its intent to pursue its aggressive licensing strategy" which stated its belief that anyone who manufactured DRAM products infringed its patented technology. Micron, 518 F.3d at 899. Here, by contrast, there is no evidence that Envisiontec has pursued litigation against any entity in any court, domestic or foreign, regarding the V-Flash. Nor has Envisiontec communicated the type of salient and credible threats of litigation present in Micron.

SO ORDERED.

                         s/Avern Cohn
                         AVERN COHN
                         UNITED STATES DISTRICT JUDGE

Dated:  August 12, 2008

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 12, 2008, by electronic and/or ordinary mail.

                         s/Julie Owens
                         Case Manager, (313) 234-5160